Millig-AN, J.,
dissenting:
This case was once before heard iu this court, aud the same points now discussed in the opinions just read were then considered and passed upon, on the same record now before us, with entire unanimity.
On the former hearing, after discussing the fourteenth section of the Act June 30, 1801, and the action of the district court of New York under it, the court proceeded to say: “ In this statement of the case it would seem, so far as the facts are developed in this record, there is nothing in the way of the payment of this claim on the order of the district court of New York. Its allowance in that court is a judicial determination of the validity and justice of the claim, and while it remains in force I know of no authority that authorizes this court to reverse it.”
In this view the cause was reminded to the general docket, with leave to the claimants to take such steps in this court, or on the orders of the prize court, to secure the payment of their judgments as they might see proper. (5 C. Cls. R., p. 408.)
They have elected to appeal again to this court, and now bring here the solemn judgments of the district court of New York as the evidence of the defendants’ indebtedness, and by the opinion of the majority they are turned out of court. And Avhy % Certainly not because the services were not rendered at the instance of the defendants, or that they were not reasonably worth the sum for which the several judgments were entered in the prize court. This much is admitted, in the opinion of the majority, as foreclosed by the decree of the district court; but the payment of the claim is denied, as I understand the opinion, because it is not warranted by the ninth and fourteenth sections of the Act June 30, 1864.
Whether my brother judges are right or wrong in the construction they have given to these provisions of the statute can make no difference whatever in the claimants’ right to recover on their judgments. Their claims, which originally rested on accounts for work and labor performed, have passed into higher evidences of debt, which constitute the real foundation of their suit in this court.
*222 The district court, in rendering its judgments in favor of the claimants, necessarily construed the fourteenth section of the Act June 30, 1864, and entered its decree accordingly.
When this decree went down, the United States were present, a party to the proceeding, in their own court, and by their silence, at least, acquiesced in the decision. They prayed no appeal, or otherwise manifested their dissent, but rested, and still continue to rest, upon the correctness of the decree. How, then, can this court, after the lapse of years, say the decision was erroneous, or the judge who gave it was mistaken in his interpretation of the statute ?
I had thought that after the decision in Ex parte Watkins, (3 Wheat., p. 201,) if there was anything settled in the whole circle of American jurisprudence on a permanent basis, it was that the judgment of a competent court, wheu it had jurisdiction of the cause and of the parties at the time the judgment was rendered, is conclusive in all other courts, except those authorized by law to revise, alter, or reverse it.
This is a constitutional doctrine, and has been so universally recognized, that it is unnecessary to cite authorities to sustain it. It is inseparable from our national existence, and essential to the unity of our system of jurisprudence.
But this rule, it is admitted, does not apply to all tribunals which bear the name of courts. There are some “courts of a special and limited jurisdiction,” says Chief Justice Marshall, in Kemp's Lessee v. Kennedy, (5 Crunch, p. 158,) “ which are created on such principles that their judgments, taken alone, are entirely disregarded, and the proceedings must show the jurisdiction.”
But when the jurisdiction is general, the record of the judgment need not show every’- step necessary to the rendition of such judgment.
The general rule in such case is, that every presumption not inconsistent with the record is to be indulged in favor of the jurisdiction ; and the judgment, however erroneous, cannot be questioned when introduced collaterally, unless it be shown affirmatively that the court had no j urisdiction. (Harvey v. Tyler, 2 Wall., pp. 329, 431; also, Kemp's Lessee v. Kennedy, 5 Cranch, p. 175; Voorhees v. Bank of United States, 10 Peters, p. 449; Ex parte Watkins, 3 Wheat., p. 201; Grignon v. Astor, 2 How., p. 319.)
In the case before us there is no attempt to show by affirmative proof that the district court of the southern district of New *223 York had not jurisdiction of this case ; and 1 think it entirely too clear for argument that none could hare been successfully-made. The district courts, by the very act of their organization, September 24,1789, (l.Stat. L., p. 73,) are clothed with the widest and most general jurisdiction; and the Supreme Court, from that day to this, have again and again held they had original jurisdiction in prize cases. (Jennings v. Carson's Executors, 1 Pet. Adm., pp. 9, 10; Glass v. The Sloop Betsey, 3 Dall., 6: Jecker v. Montgomery, 13 How., 517.)
Assuming, then, that the district court is a court of general jurisdiction, and that it had rightfully obtained jurisdiction of these cases, it follows, in the words of Justice Miller, in the case of Harvey v. Tyler, that u all its subsequent proceedings are valid, however erroneous they may be, until they are reversed on error or set aside by some direct proceeding for that purpose.”
But it is said, as the act of Congress provided a fund out of which the claimants might have been paid if they had not slept on their rights until this fund ivas distributed and covered into the Treasury, they cannot now obtain satisfaction of their j udg-ments out of the general Treasury.
I admit it might be a valid excuse for the accounting officers of the Treasury to refuse the payment of the claim when there was no money, appropriated for its payment ; but I cannot conceive that this would relinquish the Government’s liability. It would remain the same, especially if such claim had been ripened into a judgment of a court of competent jurisdiction.
This court was doubtlessly created, in pare, to meet just such cases as this ; and Congress wisely provides a fund, from year to year, out of which such cases can be paid, and the justice and integrity of the National Government maintained.
In Brown’s Case, (6 C. Cls. R., p. 171,) this court, after great deliberation and full examination of authorities, asumed jurisdictions of the case, which was founded onits own judgment, originally payable out of the “ cotton fund,” and gave another judgment, which was payable out of the general fund appropriated ' for the payment of the judgments of this court.
On the whole case, I think the claimants ought to recover.
Nott, J., did not sit in this case, and took no part in the decision.